NOTICE
Decision filed 10/12/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180328-U

NO. 5-18-0328

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| CHRISTOPHER HIGHTOWER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 17-MR-89 |
| | ) | |
| KIMBERLY BUTLER, in Her Official Capacity as Former | ) | |
| Warden of Menard Correctional Center; JACQUELINE | ) | |
| LASHBROOK, in Her Official Capacity as Warden of | ) | |
| Menard Correctional Center; JOHN/JANE DOE | ) | |
| CORRECTIONAL OFFICERS 1-7; CINDY MEYER, | ) | |
| Individually; LORI OAKLEY, Individually; and | ) | |
| LESLIE McCARTHY, Individually, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not err in dismissing prisoner's amended complaint alleging a violation of his constitutional rights to communicate, petition the government for redress of grievances, and to access the courts because he failed to allege the prison's continued practice of failing to deliver his mail, and failed to show that the prison's failure to process his grievance in a timely fashion impeded his ability to bring a redressable claim in court. In addition, the plaintiff stated no cause of action for negligence.

¶ 2    The plaintiff, Christopher Hightower, an inmate at the Menard Correctional Center (Menard), appeals the April 18, 2018, order of the circuit court of Randolph County which

1

dismissed his amended complaint against the defendants, Kimberly Butler, in her official capacity as former warden of Menard; Jacqueline Lashbrook, in her official capacity as warden of Menard; John/Jane Doe Correctional Officers 1-7; Cindy Meyer, individually; Lori Oakley, individually; and Leslie McCarthy, individually. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On or about September 8, 2017, the plaintiff filed his initial complaint against the defendants in the circuit court of Randolph County. The complaint alleges that, on October 31, 2014, while the plaintiff was imprisoned at Menard, a correctional officer wrote an "Inmate Disciplinary Report" (IDR) regarding the plaintiff. On November 7, 2014, the "adjustment committee" found the plaintiff guilty of the alleged charges. The complaint alleges that, on December 8, 2014, the plaintiff prepared and mailed two copies of a grievance addressing the IDR and adjustment committee findings. Because he was in segregation, behind a steel door, the plaintiff alleges he placed the two copies of the grievance in the prison internal mailing system, which means he placed the grievance through a crack in the steel door to be picked up by the shift correctional officer. One copy was addressed to the grievance officer, and the other was addressed to Cindy Meyer, who was an inmate counselor at Menard.

¶ 5     On December 8-9, 2014, the plaintiff observed a correctional officer retrieve the two copies of the grievances and place them in a plastic bag, along with other mail the officer had collected. On December 31, 2014, Meyer indicated to the plaintiff that she never received the grievance. On February 1, 2015, Meyer indicated to the plaintiff that the grievance officer had not received the grievance either. The complaint further alleges that, on January 3, 2015, the plaintiff mailed three money vouchers, one to each of the following: (1) Windsor Books, (2) Judy Johnson, and

2

(3) Meredith Hightower. The plaintiff subsequently discovered that only the Windsor Books voucher had been received by the trust fund department and the other two were not received.

¶ 6    According to the complaint, the plaintiff hand-delivered another grievance to Cindy Meyer on February 1, 2015, alleging that his right to communicate was being violated. He attached the December 8, 2014, grievance as exhibit 1. Meyer ignored the February 1, 2015, grievance and deemed the December 8, 2014, grievance to have been filed "out of time." Likewise, Lori Oakley (grievance officer) and Leslie McCarthy (member of the Administrative Review Board for the Illinois Department of Corrections) ignored the February 1, 2015, grievance and denied the December 8, 2014, grievance as untimely. The complaint alleges that the destruction of the plaintiff's December 8, 2014, grievance and disregard of his February 1, 2015, grievance resulted in his IDR and subsequent punishment staying in place, causing him damage in the form of stigmatization, an increase in aggression level, and placement in a high aggression cell house.

¶ 7    The complaint outlined the respective roles played by John/Jane Does 1-6 as follows. John/Jane Doe 1 picked up the grievances on December 8 or 9, 2014, and took them to the sergeant's desk. John/Jane Doe 2 was the sergeant on duty from 11 p.m. to 7 a.m. and "culled out" the grievances and passed them to John/Jane Doe 3, who was the lieutenant on duty that same shift. John/Jane Doe 3 separated out which grievances were to go to the major and which grievances were to be sent to the counselor or the grievance officer. John/Jane Doe 4, who is the major on duty, thereafter determined which grievances to forward to the counselor or grievance officer. The complaint identifies John/Jane Doe 5 as a correctional counselor and John/Jane Doe 6 as a correctional grievance officer assigned to retrieve grievances from the locked grievance box. The complaint alleges that John/Jane Does 1-6 destroyed the plaintiff's December 8, 2014,

3

grievance, as well as his trust fund vouchers with enclosed letters to his family members. However, the complaint does not delineate the source of the plaintiff's knowledge as to these allegations.

¶ 8　The complaint alleges that the next time the plaintiff went to segregation, his grievance addressing the IDR and adjustment committee findings was again not forwarded to the grievance officer. Thus, the complaint concludes, Jacqueline Lashbrook, as warden, "approves, supports, and continues [former warden, Kimberly Butler]'s policy of allowing segregation unit officers to intercept grievances, review them, and ultimately decide which grievances will be destroyed and which will be forwarded for consideration." The complaint alleges the intentional destruction of his correspondence violated his first amendment right to communicate, to petition the government for redress of grievances, and to access the courts. In addition, the complaint alleges that the failure of Butler, Lashbrook, Meyer, Oakley, and McCarthy to address his February 1, 2015, grievance "constitutes the tort of negligence." The complaint requests a declaratory judgment that the plaintiff's constitutional rights have been violated, an injunction requiring Lashbrook to disband their policy of censoring grievances and establish a receipt system for grievances, and for compensatory damages for "stigmatization and emotional injuries," along with punitive damages. The plaintiff appends the December 8, 2014, grievance, the February 1, 2015, grievance, the decision of the Administrative Review Board denying the grievance as out of time, and documentation regarding the October 31, 2014, IDR to his complaint.

¶ 9　On December 11, 2017, the plaintiff filed a motion for leave to obtain limited discovery, pursuant to Illinois Supreme Court Rule 201(d) (eff. July 1, 2014). The plaintiff sought discovery of the identities and addresses of the John/Jane Doe defendants so that the plaintiff could obtain service of process. According to the motion, the plaintiff attempted to obtain this information from

4

Menard through the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2016)) but was unsuccessful.

¶ 10    On February 20, 2018, the defendants filed a combined motion to dismiss the plaintiff's complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)). In this motion, the defendants argued that the plaintiff's claims should be dismissed because the plaintiff "is not entitled to grievance responses, and any failure to respond to his grievances would not violate his constitutional rights in any way." On February 27, 2018, the defendants filed a motion to stay discovery pending resolution of the defendants' combined motion to dismiss. On March 1, 2018, the circuit court entered an order granting the defendants' motion to stay discovery. On March 12, 2018, the plaintiff filed a motion to compel discovery, which the circuit court construed as a motion to reconsider its order staying discovery. The circuit court entered an order denying the motion, finding that the identity and personal information of John and Jane Doe, as well as the location of McCarthy, are not necessary to the disposition of the motion to dismiss. On March 19, 2018, the plaintiff filed a motion for leave of court to pursue limited discovery necessary to respond to the defendants' motion to dismiss, and the circuit court entered a docket entry denying the motion.

¶ 11    On April 16, 2018, the plaintiff filed a motion for leave to file an amended complaint, along with a proposed first amended complaint. In the amended complaint, the plaintiff added some allegations specifying that he was suing Lashbrook and Butler based on *respondeat superior* as well as on the basis that they were notified of the fact that prisoner grievances were being destroyed and that they facilitated this by "turning a blind eye, [and] approv[ing] and condon[ing] grievance destruction by refusing to take steps to correct the problem." The plaintiff also added more specific allegations as to the time of the incidents he previously described, including the addition of

5

John/Jane Doe 7, a correctional counselor who, along with the grievance officer, was assigned to retrieve the grievances that had been placed in the locked grievance box.

¶ 12    In his proposed amended complaint, the plaintiff outlined his causes of action in 13 counts. Each count is based upon liability pursuant to section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2012)), which we summarize as follows:

Count 1- direct liability of Lashbrook and Butler for violation of the plaintiff's constitutional right to communicate;

Count 2- liability of Lashbrook and Bulter based on the doctrine of *respondeat superior* for violation of the plaintiff's constitutional right to communicate;

Count 3- direct liability of Lashbrook and Butler for violation of the plaintiff's constitutional right to petition the government for redress of grievances;

Count 4- liability of Lashbrook and Butler based on the doctrine of *respondeat superior* for violation of the plaintiff's constitutional right to petition the government for redress of grievances;

Count 5- direct liability of Lashbrook and Butler for violation of the plaintiff's constitutional right of access to the courts;

Count 6- liability of Lashbrook and Bulter based on the doctrine of *respondeat superior* for violation of the plaintiff's constitutional right of access to the courts;

Count 7- liability of John/Jane Does 1-7 for failure to send the plaintiff's mail to family and requests to his trust fund for disbursements, resulting in violation of the plaintiff's constitutional right to communicate;

Count 8- liability of John/Jane Does 1-7 for failure to deliver the plaintiff's first grievance to prison authorities, resulting in violation of the plaintiff's constitutional right to petition for redress of grievances;

Count 9- liability of John/Jane Does 1-7 for failure to deliver the plaintiff's first grievance to prison authorities, resulting in violation of the plaintiff's constitutional right of access to the courts;

Count 10- liability of Meyer, Oakley, and McCarthy for their role in the denial of the plaintiff's first grievance as untimely, resulting in violation of the plaintiff's constitutional right to petition the government for the redress of grievances;

Count 11- liability of Meyer, Oakley, and McCarthy for their role in the denial of the plaintiff's first grievance as untimely, resulting in violation of the plaintiff's right of access to the courts;

Count 12- liability of Meyer, Oakley, and McCarthy for their role in prison authorities' refusal to answer the plaintiff's second grievance, resulting in violation of the plaintiff's right to communicate; and

Count 13- liability of Meyer, Oakley, and McCarthy for their role in prison authorities' refusal to answer the plaintiff's second grievance, resulting in violation of the plaintiff's right of access to the courts.

¶ 13    On April 18, 2018, the circuit court entered an order noting that the plaintiff had failed to file a response to the defendants' motion to dismiss and instead filed a motion for leave to file an amended complaint. The circuit court's order granted the plaintiff's motion for leave to file an amended complaint and stated that it would consider the defendants' motion to dismiss as it applies to the amended complaint. The circuit court then found that inmate access to the grievance process

7

is not a constitutionally protected right, and granted the defendants' motion to dismiss, specifying that the plaintiff's amended complaint was dismissed with prejudice. On May 18, 2018, the plaintiff filed a motion to reconsider, which the circuit court denied on May 21, 2018. On June 20, 2018, the plaintiff filed a notice of appeal.

¶ 14                                    II. ANALYSIS

¶ 15    At the outset, we note that the plaintiff filed a motion in this court for leave to file a reply brief that exceeds the page limitation, which we hereby grant. Thus, we have considered the plaintiff's reply brief in full. We begin our analysis relative to the merits of the plaintiff's appeal with a statement of our standard of review. A motion to dismiss under section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West 2016)) tests the legal sufficiency of a plaintiff's claim, while a motion to dismiss under section 2-619 of the Code (*id.* § 2-619) admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleading that defeat the claim. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). Under either section, our standard of review is *de novo*. *Id.* In addition, we can affirm the circuit court's judgment based on any ground supported by the record. *Bank of America, N.A. v. Luca*, 2013 IL App (3d) 120601, ¶ 14. With these standards in mind, we turn to the merits of the plaintiff's appeal.

¶ 16    On appeal, the plaintiff argues that the circuit court erred in dismissing his complaint because his allegations that multiple letters he mailed were not delivered and the two grievances were destroyed sufficiently alleged a violation of his first amendment rights to communicate with others, to petition the government for redress of grievances, and to access the courts. We will address these alleged violations of the plaintiff's constitutional rights, in terms of the plaintiff's right to bring a section 1983 claim, in turn. First, "[i]t is well settled that officials may not arbitrarily impinge upon the first amendment rights of prisoners to communicate with others

8

through the mail service." *Beahringer v. Roberts*, 334 Ill. App. 3d 622, 627 (2002) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989)). However, because prison security is a sufficiently important governmental interest to support some limitations on prisoners' rights, "merely alleging an isolated delay or a relatively short-term, noncontent-based disruption in the delivery of inmate mail will not support a cause of action upon the first amendment, even against a motion to dismiss." *Id.* (citing *Sizemore v. Williford*, 829 F.2d 608 (7th Cir. 1987)).

¶ 17    Measured against these standards, we find that the plaintiff's factual allegations do not state a first amendment claim based on an abridgement of his right to communicate. The plaintiff alleges that one grievance and three money vouchers with accompanying letters were not delivered through the prison mailing system on two dates, one in December 2014 and the other in January 2015. When the plaintiff amended his complaint in April 2018, he did not maintain that any further correspondence had not been delivered by the prison system. We find the plaintiff's allegations amount to a short-term disruption in the delivery of the plaintiff's correspondence. While we acknowledge that had this disruption continued, the plaintiff may have been able to state a claim for a violation of his right to communicate, the current allegations are of a sporadic and short-term interruption in the plaintiff's mail service, and as such, are insufficient to state a cause of action. See *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). For these reasons, the circuit court did not err in dismissing counts 1, 2, 7, and 12 of the plaintiff's amended complaint, which alleged a violation of his right to communicate.

¶ 18    We turn now to the plaintiff's allegations that the delay in the processing of his grievances, as well as their ultimate denial, amounts to a violation of his right to petition the government for the redress of grievances, and to access the courts. The first amendment right to petition the government for the redress of grievances includes the right of access to the courts. *Bridges v.*

9

*Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009) (citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). Prisoners, like other individuals, have the right to petition the government for redress of grievances, which of course, includes access of prisoners to the courts for the purpose of presenting their complaints. *Id.* However, prison grievance procedures are not mandated by the first amendment and do not by their very existence create interests protected by the constitution. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). To succeed on his constitutional claim based on his right to petition the government for redress of grievances and to access the courts, the plaintiff must show that he was impeded in his ability to bring a redressable claim to court. *Bridges*, 557 F.3d at 553.

¶ 19    In his brief on appeal, the plaintiff argues that by denying his first grievance as untimely, he was impeded in his ability to bring a redressable claim to court because the untimeliness finding would result in a ruling in court that he was procedurally defaulted in his grievance procedure, thereby failing to exhaust his administrative remedies. We disagree. As pointed out in the State's brief, courts routinely permit prisoners to sue without exhausting administrative remedies when prison staff make the grievance process unavailable by failing to respond to grievances. See, *e.g.*, *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) ("If administrative remedies are not 'available' to an inmate, then an inmate cannot be required to exhaust." (Internal quotation marks omitted.)); see also *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (remedies unavailable where prison officials "do not respond to a properly filed grievance"). Without filing suit requesting redress as to the substance of that grievance, the plaintiff fails to show that its denial as untimely impeded his ability to petition the government for the redress of his grievances by preventing him to bring a redressable claim in court. For these reasons, we find that the circuit court did not err in dismissing the remaining counts of the plaintiff's amended complaint.

Furthermore, we agree with the circuit court's assessment that providing the plaintiff leave to conduct discovery of the identity of John/Jane Does 1-7 would not change this result.

¶ 20    Finally, the plaintiff raises, for the first time in his reply brief, an issue as to whether his amended complaint properly raises a claim for negligence. We find the plaintiff has forfeited this issue for failing to raise it in his opening brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in appellant's opening brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Forfeiture notwithstanding, based on our review of the plaintiff's amended complaint, we find no claim for negligence. The first paragraph of the plaintiff's amended complaint specifies that "this is a 1983 action," and all counts of the amended complaint set forth alleged deprivations of the plaintiff's constitutional rights, which is consistent with claims being made under section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2012)). While several of the allegations state that the officers "willfully, intentionally, and negligently" destroyed the plaintiff's grievances, none of the claims set forth the elements of a negligence claim, *i.e.*, duty, breach of duty, causation, and damages. See *Guvenoz v. Target Corp.*, 2015 IL App (1st) 133940, ¶ 89. For these reasons, we find that the plaintiff's amended complaint stated no cause of action for negligence.

¶ 21                                    III. CONCLUSION

¶ 22    For the foregoing reasons, we affirm the April 18, 2018, order of the circuit court of Randolph County that dismissed the plaintiff's amended complaint with prejudice.

¶ 23    Affirmed.